## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARYL D. WILSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 10-CV-271-GKF-TLW |
| | ) | |
| JUSTIN JONES, Director, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner Daryl D. Wilson, a state prisoner appearing through counsel, filed his original petition (Dkt. # 1), together with a brief in support (Dkt. # 4), on February 26, 2010, in the United States District Court for the Western District of Oklahoma. On April 29, 2010, the case was transferred to this District Court (Dkt. # 9). Respondent filed a response to the petition (Dkt. # 24) on April 1, 2011, and provided the state court record necessary for resolution of Petitioner's claims (Dkt. ## 24, 25, 26). Petitioner filed a reply (Dkt. # 29), on June 1, 2011. For the reasons discussed below, the petition for writ of habeas corpus shall be denied.

### BACKGROUND

During the evening of June 2, 2006, Hoby Cox and his brother, John Cox, took a walk after dinner at their mother's home near the Turner Turnpike in rural Creek County, Oklahoma. They stopped at a local bar, the Black Gold Lounge, to drink beer and play pool. Also at the bar that night was a large family group, which included Petitioner, celebrating the twenty-first birthday of one of the family members. It is uncontested that Petitioner and the Cox brothers consumed alcohol while at the bar. A dispute arose during the evening between the Cox brothers and Petitioner's family

group when it was believed that John Cox made some type of inappropriate comment to one of the young female members of the Wilson family. Hoby Cox apologized for his brother and everyone shook hands. However, when the Cox brothers left, the dispute reignited and became physical in the parking lot of the bar. The fight broke up quickly and the Cox brothers took off, walking home. The Wilson family party was ending around the same time and Petitioner left, driving his pick-up truck, with his nephew, Joseph Seaton, as a passenger. What happened next is far from clear.  However, it is uncontroverted that, soon after leaving the Black Gold Lounge, Petitioner's truck became stuck in a ditch with John Cox pinned under the front end of the truck. Petitioner's family was called to the scene where they tried unsuccessfully to lift the truck off of John Cox's body. Law enforcement and emergency medical help were also called, but the victim was pronounced dead. Hoby Cox was not seriously injured.

As a result of those events Petitioner was arrested and charged in an amended information[1] with Second Degree Murder or, alternatively, First Degree Manslaughter (Count 1), and Assault and Battery with a Dangerous Weapon (Count 2), in Creek County District Court Case No. CF-2006-210. At the conclusion of a jury trial, Petitioner was convicted of First Degree Manslaughter, After Former Conviction of Two or More Felonies. He was acquitted of Assault and Battery with a Dangerous Weapon. On March 5, 2007, the trial court sentenced Petitioner to thirty (30) years imprisonment, in accordance with the jury's recommendation. Petitioner was represented at trial by attorney C. Rabon Martin.

---

[1]     Petitioner was originally charged with First Degree Murder.

Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA). Represented by attorney Gretchen Garner Mosley, he raised the following eight (8) propositions of error:

Proposition One: The trial court committed reversible error in allowing inadmissible hearsay to be used as substantive evidence of guilt under the excited utterance exception to the hearsay rule.

Proposition Two: The evidence was insufficient as a matter of law to sustain a conviction for Manslaughter in the First Degree.

Proposition Three: The jury could reasonably have interpreted the jury instructions in conjunction with prosecutorial misconduct as permitting conviction of Manslaughter in the First Degree on proof of unintentional conduct in violation of the Fourteenth Amendment.

Proposition Four: The trial court erred in failing to instruct on lesser included offenses and defenses supported by the evidence.

Proposition Five: The trial court erred in failing to suppress/strike Deputy Carter's testimony regarding two statements Mr. Wilson allegedly made taken in violation of the Fourth Amendment.

Proposition Six: Prosecutor repeatedly inflamed passions of jury by referencing fact that Mr. Wilson was on probation in first stage.

Proposition Seven: Trial counsel was ineffective for failing to present exculpatory evidence and failing to properly preserve the record for direct appeal.
1.    The 911 audiotape.
2.    Failure to preserve the record.

Proposition Eight: Cumulative error deprived Mr. Wilson of a fair trial.

(Dkt. # 24, Ex. 1). Appellate counsel also sought an evidentiary hearing on the ineffective assistance of counsel claim regarding counsel's failure to present and preserve the 911 audiotape (Dkt. # 24, Ex. 2). In an unpublished summary opinion filed December 18, 2008, in Case No. F-2007-231 (Dkt. # 24, Ex. 4), the OCCA denied the request for an evidentiary hearing, rejected the direct appeal

claims, and affirmed the judgment and sentence of the trial court. Petitioner did not seek certiorari review from the United States Supreme Court.

On March 16, 2010, after the filing of his federal petitioner for writ of habeas corpus, Petitioner filed an application for post-conviction relief in the district court, raising the same eight grounds of error as those raised on direct appeal, with additional allegations of ineffective assistance of trial counsel included in ground seven (Dkt. # 24, Ex. 5). He filed an amended application for post-conviction relief on April 2, 2010, alleging eight (8) grounds of error worded exactly as they are presented in the habeas petition currently before this Court (Dkt. # 24, Ex. 6).  By order filed June 22, 2010, the district court denied relief (Dkt. # 24, Ex. 8). Petitioner appealed (Dkt. # 24, Ex. 9).  By order filed September 17, 2010, in Case No. PC-2010-700, the OCCA affirmed the decision of the district court, finding all claims barred by the doctrines of *res judicata* and waiver (Dkt. # 24, Ex. 11).

On February 26, 2010, Petitioner filed his federal petition for writ of habeas corpus (Dkt. #1). He raises the following grounds of error:

| | |
|---|---|
| Ground One: | The evidence was insufficient as a matter of law to sustain a conviction for Manslaughter in the First Degree. |
| Ground Two: | The trial court committed reversible error in allowing inadmissible hearsay to be used as substantive evidence of guilt under the excited utterance exception to the hearsay rule. |
| Ground Three: | The jury could reasonably have interpreted the jury instructions in conjunction with prosecutorial misconduct as permitting conviction of Manslaughter in the First Degree on proof of unintentional conduct in violation of the Fourteenth Amendment. |
| Ground Four: | The trial court erred in failing to instruct on lesser included offenses and defenses supported by the evidence. |

| | |
|---|---|
| Ground Five: | The trial court erred in failing to suppress/strike Deputy Carter's testimony regarding two statements Mr. Wilson allegedly made taken in violation of the Fourth Amendment. |
| Ground Six: | Prosecutor repeatedly inflamed passions of jury by referencing the fact that Mr. Wilson was on probation in first stage. |
| Ground Seven: | Trial counsel was ineffective for failing to present exculpatory evidence, failing to be adequately educated to his case, failing to properly preserve the record for direct appeal, failing to allow Petitioner to testify on his own behalf, and failing to present plea offers to Petitioner. |
| Ground Eight: | Cumulative error deprived Mr. Wilson of a fair trial. |

(Dkt. # 1). In response, Respondent asserts that Petitioner's claims are barred, are not cognizable

in this habeas proceeding, or do not justify habeas relief under 28 U.S.C. § 2254(d).  See Dkt. # 24.

## *ANALYSIS*

**A.       Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion

requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). With

the exception of the claims of ineffective assistance of counsel discussed in Part C, footnote 2,

below, Petitioner fairly presented the substance of his claims to the OCCA on direct and post-

conviction appeal.  The unexhausted claims are denied as procedurally barred. Therefore, the Court

finds that consideration of Petitioner's claims is not precluded by the exhaustion requirement of 28

U.S.C. § 2254(b).

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See

Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated claims 1-6, part of 7, and 8 on direct appeal.  See Dkt. # 24, Ex. 4.  Therefore,  the § 2254(d) standard applies to this Court's analysis of Petitioner's those claims.

**1.      Insufficient evidence (ground 1)**

As his challenge to the sufficiency of the evidence, Petitioner claims that the State failed to carry its burden of proving each of the elements of First Degree Manslaughter. Specifically, Petitioner alleges that (1) the death of John Cox was accidental,  (2) Petitioner's conduct was not

intentional, (3) Deputy Carter's testimony regarding Petitioner's statement at the scene[2] was not corroborated. See Dkt. # 4 at 16-17. Citing Coddington v. State, 142 P.3d 437, 455 (Okla. Crim. App. 2006), and Spuehler v. State, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985), the OCCA found on direct appeal that there was sufficient trial evidence for a rational trier of fact to find the elements of heat of passion manslaughter beyond a reasonable doubt. See Dkt. # 24, Ex. 4 at 3.

Sufficiency of the evidence claims are evaluated based on the following standard established by the Supreme Court:

> . . . the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (citations omitted). Although the OCCA did not cite Jackson in its analysis rejecting Petitioner's challenge to the sufficiency of the evidence, the state appellate court did state the correct standard and cited Oklahoma cases which acknowledge the Jackson standard. See e.g., Spuehler, 709 P.2d at 203 (quoting the Jackson standard). Thus, the state

---

[2]     Deputy Carter testified that, at the scene, Petitioner told him that "the two men took off running and he was going to go down to the end of the street and turn around. He told me that he accidentally hit one of the men with the right side of his pick-up and that when he got to the driveway he was gonna turn into the driveway and he accidentally hit the second person." See Dkt. # 26-3, Tr. Trans. Vol. II at 14.

appellate court effectively applied the <u>Jackson</u> standard in considering Petitioner's challenge to the sufficiency of the evidence.   Under § 2254(d), Petitioner must demonstrate that the OCCA's decision amounted to an unreasonable application of <u>Jackson</u>, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under Oklahoma law, the crime of First Degree Manslaughter may be committed when perpetrated without a design to effect death either in a heat of passion but in a cruel and unusual manner, or by means of a dangerous weapon.  <u>See</u> Okla. Stat. tit. 21, § 711(2).  In this case, viewing the evidence in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that Petitioner caused the victim's death without a design to effect his death in a heat of passion, but in a cruel and unusual manner.  Petitioner concedes that he was in the "heat of passion" when he swerved his truck into the ditch. <u>See</u> Dkt. # 4 at 25 ("Obviously, there was the death of a human, caused by Mr. Wilson, driving his vehicle, which was a dangerous weapon under the uniform instruction given, and Mr. Wilson was in a heat of passion at the time the death occurred."). Petitioner's nephew, Joseph Seaton, testified that when he left the Black Gold Lounge with Petitioner, they went looking for the Cox brothers to "kick their ass." <u>See</u> Dkt. # 26-2, Tr. Trans. Vol. I at 238.  Seaton testified that he never saw the Cox brothers before his uncle swerved the truck and they ended up in the ditch. <u>Id.</u> at 239. When they got out of the truck they saw that John Cox was pinned beneath the truck. <u>Id.</u> at 240. The medical examiner testified that the deceased died "due to asphyxia as a result of chest compression," and that "the asphyxia or lack of oxygen was brought about by the presence of a prolonged chest compression that Mr. Cox experienced prior to his death as a result of a car being on his chest." <u>See</u> Dkt. # 26-3, Tr. Trans Vol. II at 76.  The

jury was entitled to weigh the inferences from these facts and could have concluded beyond a reasonable doubt that Petitioner committed the crime of First Degree Manslaughter.

After carefully reviewing the trial transcript in the light most favorable to the prosecution, the Court finds there was sufficient evidence, as summarized above, from which a reasonable jury could have found that Petitioner committed First Degree Manslaughter. Thus, Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to or an unreasonable application of Jackson, or was based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d). Habeas corpus relief on this claim shall be denied.

**2.      Inadmissible hearsay (ground 2)**

In his second ground for relief, Petitioner contends that the trial court erred in allowing inadmissible hearsay to be used as substantive evidence of guilt. More specifically, he complains that the following testimony by Deputy Carter regarding statements made to him by Seaton to should not have been allowed as part of the deputy's testimony under the excited utterance exception to the hearsay rule:

Prosecutor:     And sir, what did you ask Mr. Seaton?

Deputy:         I asked him what happened.

Prosecutor:     Simple as that?

Deputy:         Yes, sir.

Prosecutor:     And what did he say in reply?

Deputy:         Mr. Wilson stated - - or excuse me. Mr. Seaton stated that Mr. Wilson came into the bar, told him that he had been into a fight and to come on.

                They then went out and got in Mr. Wilson's pick-up, went around to the 77th or 78th West Avenue. He stated that Mr. Wilson stopped the pick-up and told him to get out. He said that the two men were coming across the street. He

described the smaller one, which would be Hoby, as he took off running right away.

John, he described him as the stockier one of the two, stopped Joseph Seaton. Said that when he got out, John kind of squared up on him like they were gonna fight and he told John, he said, you know, "Just be calm." I don't remember exactly what his words were, but something along that line. And then he said John just took off running and he didn't know why.

I asked him what happened then. He said the pick-up took off away from him and his words "at a high rate of speed" and he couldn't see anything else because everything, he was looking from behind the pick-up, said all he seen was the brake lights come on and the pick-up go in the ditch, the back end of the pick-up kind of go up.

(Dkt. # 26-3, Tr. Trans. Vol. II at 16-17). At that point, defense counsel raised a hearsay objection.

The trial court overruled the objection, saying it was an excited utterance which could be admitted

for the truth of the matter asserted. Id. at 17-18.

This claim of error was raised on direct appeal. Agreeing partially with Petitioner's

argument, the OCCA found as follows:

The trial court erred in admitting Seaton's statement to Deputy Carter under the excited utterance exception to the hearsay rule and allowing the jury to consider it as substantive evidence. 12 O.S. Supp. 2004, § 2803 (2). The proper inquiry for evidentiary errors is whether this Court has "grave doubts" that the outcome of the trial would have been materially affected had the error not occurred. *See Howell v. State*, 2006 OK CR 28, ¶ 33, 138 P.3d 549, 561. Contrary to Wilson's claim, Seaton's statement was not the only substantive evidence to refute Wilson's claim of accident. The jury had Wilson's statements made at the scene to use as substantive evidence to determine the facts. Under the circumstances of this case, we have no grave doubt that the outcome would have been different had the trial court properly instructed Wilson's jury that Seaton's inconsistent statements could only be used as impeachment evidence.

(Dkt. # 24, Ex. 4 at 2).  Respondent contends that the claim raises no federal constitutional issue,

and is not cognizable in this habeas corpus proceeding.

A federal habeas court has no authority to review a state court's interpretation or application of its own state laws.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions). Instead, when conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  Id. at 68; 28 U.S.C. § 2241.

In ground two, Petitioner challenges the state court's evidentiary ruling.  Because the claim alleges an error of state law, it is not cognizable in this federal habeas corpus proceeding. McGuire, 502 U.S. at 67-68. See also Matthews v. Price, 83 F.3d 328, 331 (10th Cir. 1996) (declining to address a habeas claim regarding a state court's interpretation of hearsay law "even if the state court erred" in interpreting its law).  However, to the extent the claim may implicate Petitioner's constitutional rights, Petitioner must demonstrate that his trial was rendered fundamentally unfair by the admission of the challenged evidence. See Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974); Duckett v. Mullin, 306 F.3d 982, 999 (10th Cir. 2002) (holding that habeas corpus relief cannot be granted on the basis of state court evidentiary rulings "unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results" (quoting Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir. 2000))). Petitioner may obtain habeas relief for an improper state evidentiary ruling only "if the alleged error was so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process." Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002) (alteration in original; quotation marks and citation omitted). The category of infractions which violate fundamental fairness is very narrow, and Petitioner's claim falls outside that category. See Bullock v. Carver, 297 F.3d 1036, 1055 (10th Cir. 2002).  The Court finds that Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair by the

admission of the challenged testimony of Deputy Carter regarding Seaton's statements. Because Petitioner's ground two claim is not cognizable in this federal habeas corpus proceeding, and Petitioner has not shown that his trial was rendered fundamentally unfair, habeas corpus relief shall be denied on this claim.

### 3. Error in jury instruction (ground 3)

As his third ground of error, Petitioner claims that the instructions regarding heat of passion manslaughter were insufficient to instruct the jury correctly as to the law. See Dkt. # 4 at 25. He complains of a likelihood that the jury interpreted the instructions as permitting conviction for manslaughter while believing the homicide to be an accident. Further, Petitioner argues that this interpretation was exacerbated by the prosecution's statements, made during closing argument, that, even if the killing were an accident, Petitioner was criminally responsible. Id. at 25-26. The OCCA rejected this claim, finding as follows:

> We cannot agree that the trial court's instructions on heat of passion manslaughter and excusable homicide coupled with the prosecutor's argument allowed the jury to convict in the absence of adequate proof, warranting relief under the plain error doctrine. The trial court submitted the uniform instructions, including the appropriate causation instruction. These instructions properly guided the jury in arriving at a verdict.

(Dkt. # 24, Ex. 4 at 3 (internal citation omitted)).

"As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977))); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state conviction may

only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial.").

Upon careful review of the record, the Court finds that the state court's instructions to the jury about heat of passion manslaughter, coupled with arguments made by the prosecutor, did not deprive Petitioner of fundamental fairness or violate due process. See Kibbe, 431 U.S. at 155. The OCCA's decision was not an unreasonable application of Supreme Court law, or based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas corpus relief on ground three.

### 4.      Failure to instruct (ground 4)

As his fourth ground of error, Petitioner complains that he was denied a fair trial when the trial court failed to instruct on the lesser included offenses of (1) Being Involved in an Accident While Under the Influence of Alcohol, and (2) Causing an Accident While Under the Influence of Alcohol. See Dkt. # 4 at 31. The OCCA rejected this claim, as follows:

> The trial court did not err in failing to instruct *sua sponte* on the lesser offenses of Being Involved in an Accident While Under the Influence and Causing an Accident While Under the Influence. 47 O.S. Supp. 2004, § 11-904 (A) and (B). Jury instructions on lesser forms of homicide should be given if reasonably supported by the evidence. *See Jackson v. State*, 2006 OK CR 45, ¶ 25, 146 P.3d 1149, 1159, *cert. denied,* __ U.S.__, 128 S.Ct. 76, 169 L.Ed.2d 58 (2007). The trial court submitted instructions on Second Degree Murder, First Degree Manslaughter, Negligent Homicide and Excusable Homicide. The lesser offenses Wilson now contends were warranted do not involve fatalities, but rather involve accidents resulting in personal injury or great bodily injury. 47 O.S. Supp. 2004, § 11-904 (A) and (B). Because Wilson's actions resulted in the victim's death, these instructions were not warranted.

(Dkt. # 24, Ex. 4 at 3-4).

Petitioner's case was a non-capital case. Tenth Circuit precedent establishes a rule of "automatic non-reviewability" for claims based on a state court's failure, in a non-capital case, to

13

give a lesser included offense instruction.  <u>Dockins v. Hines</u>, 374 F.3d 935, 938 (10th Cir. 2004) (stating that neither the Tenth Circuit nor the United States Supreme Court has ever recognized a federal constitutional right to a lesser included offense instruction in non-capital cases). For that reason, Petitioner is not entitled to habeas relief on his claim challenging the trial court's failure to instruct on the lesser included offenses of Being Involved in an Accident While Under the Influence of Alcohol, or Causing an Accident While Under the Influence of Alcohol.

### 5.      Failure to strike Deputy Carter's testimony (ground 5)

In ground five, Petitioner argues that the testimony of Deputy Carter regarding two statements allegedly made by Petitioner should have been suppressed because they were the result of an invalid waiver of Petitioner's rights. Further, Deputy Carter did not have probable cause to arrest Petitioner when he handcuffed him at the scene. <u>See</u> Dkt. # 4 at 35-36. The OCCA denied relief on this claim, finding simply that, "[t]he trial court did not err in rejecting Wilson's illegal arrest argument or in refusing to strike Wilson's statements to Deputy Carter." <u>See</u> Dkt. # 24, Ex. 4 at 4. Respondent contends that Petitioner has been provided the opportunity to fully and fairly litigate these Fourth Amendment issues, thus precluding habeas relief according to <u>Stone v. Powell</u>, 428 U.S. 465 (1976).

In <u>Stone v. Powell</u>, the Supreme Court held that where the state has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial. <u>Id.</u> at482.  The Tenth Circuit has reiterated that a federal habeas corpus court may not overturn a state criminal conviction because of a violation of the Fourth Amendment if the petitioner had a full and fair opportunity to litigate the claim.  <u>Brown v. Sirmons</u>, 515 F.3d 1072,

1082 (10th Cir. 2008); Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992); Gamble v. Oklahoma, 583 F.2d 1161, 1165 (10th Cir. 1978).

The record demonstrates that the state courts granted Petitioner a full and fair opportunity to litigate his Fourth Amendment claims. Prior to commencement of trial, Petitioner filed a motion to suppress, see Dkt. # 26-7,  O.R. at 26-27, in which he challenged the validity of the arrest and requested suppression of statements he made to Deputy Carter at the scene.  The motion was heard after the State rested and before the defense presented its case. See Dkt. # 26-3, Tr. Trans. Vol. II at 89-90. Petitioner's motion to suppress was overruled. Id. at 90. As indicated above, Petitioner also raised his Fourth Amendment claims on direct appeal, see Dkt. # 24, Ex. 1, where they were rejected by the OCCA, see id., Ex. 4.

Based on the record, the Court concludes that Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims in the state courts.  As a result, this Court is precluded from considering the issues raised in ground five of Petitioner's petition for a writ of habeas corpus based on Stone v. Powell, 428 U.S. at 494; see also Gamble, 583 F.2d at 1165 (opportunity for full and fair litigation in state court under Stone v. Powell includes opportunity to raise Fourth Amendment claim, full and fair evidentiary hearing, and recognition and application of correct Fourth Amendment standards).  Petitioner's request for habeas relief premised on violations of the Fourth Amendment shall be denied.

## 6. Prosecutorial misconduct (ground 6)

As his sixth proposition of error, Petitioner asserts that the prosecutor inflamed the passions of the jury during closing argument. Specifically, he complains that the prosecutor (1) made improper remarks regarding Petitioner's probation status, and (2) commented on Seaton's

outstanding warrants, thus casting aspersions on the entire Wilson family. See Dkt. # 4 at 40-41. The

OCCA rejected this claim on direct appeal as follows:

> Wilson was not deprived of a fair trial because of prosecutorial misconduct. Any
> misstatement by the prosecutor concerning the credibility of Wilson's family
> regarding his probation status did not render Wilson's trial so fundamentally unfair
> that the jury's verdict, in light of the weight of the evidence presented at trial, cannot
> be relied upon.

(Dkt. # 24, Ex. 4 at 4).

Where prosecutorial misconduct does not implicate a specific constitutional right, improper

remarks require reversal of a state conviction only if the remarks "so infected the trial with

unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo,

416 U.S. 637, 643 (1974). To determine whether a trial is rendered fundamentally unfair, we

examine the entire proceeding, "including the strength of the evidence against the petitioner, both

as to guilt at that stage of the trial and as to moral culpability at the sentencing phase" as well as

"[a]ny cautionary steps-such as instructions to the jury-offered by the court to counteract improper

remarks." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). "[I]t is not enough that the

prosecutors' remarks were undesirable or even universally condemned." Darden v. Wainwright, 477

U.S. 168, 181 (1986) (internal quotation marks omitted). The ultimate question is whether the jury

was able to fairly judge the evidence in light of the prosecutors' conduct. Bland v. Sirmons, 459 F.3d

999, 1024 (10th Cir. 2006). "To view the prosecutor's [conduct] in context, we look first at the

strength of the evidence against the defendant and decide whether the prosecutor's [conduct]

plausibly could have tipped the scales in favor of the prosecution." Fero v. Kerby, 39 F.3d 1462,

1474 (10th Cir. 1994) (quotations omitted); see also Smallwood v. Gibson, 191 F.3d 1257, 1275-76

(10th Cir. 1999). Where an objection is sustained and the jury is admonished to disregard the

objectionable comment, the trial court's admonition usually cures any error. See Patton v. Mullin, 425 F.3d 788, 800 (10th Cir. 2005). Furthermore, there is a general presumption that a jury follows a trial court's instructions.  See Battenfield v. Gibson, 236 F.3d 1215, 1225 (10th Cir. 2001) (citing Weeks v. Angelone, 528 U.S. 225 (2000)).  If prosecutorial misconduct sufficiently impacts a specific constitutional right, the Court applies the constitutional standard applicable to that right. Mahorney v. Wallman, 917 F.2d 469 (10th Cir.1990) (finding that when the impropriety complained of effectively deprived the defendant of a specific constitutional right, such as the presumption of innocence, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair).  With the applicable law in mind, the Court will review the two areas of alleged prosecutorial misconduct to determine whether the OCCA's adjudication of this claim was contrary to clearly established federal law.

During closing argument, the prosecutor made several references to the fact that Petitioner was on probation at the time of the incident.  See Dkt. # 26-4, Tr. Trans. Vol. III at 6, 7, 8, 10.  As Petitioner admits, however, his probation status was originally presented to the jury through the testimony of his sister during the defense portion of the trial. See Dkt.; # 26-3, Tr. Trans. Vol. II at 126 (testifying that she told her brother to leave the scene "because he was on probation"). Petitioner's sister then went on to testify that Petitioner did not follow her advice. Thus, the prosecutor's comments during closing argument were based on the evidence and did not deprive Petitioner of a fair trial.  See Duvall v. Reynolds, 139 F.3d 768, 795 (10th Cir. 1998).

The prosecutor also mentioned that Seaton had an outstanding warrant for assault. Petitioner complains that the prosecutor unfairly encouraged the jury to consider this fact as proof of the character of Seaton, Petitioner, and the entire Wilson family. Petitioner presents no evidence and

17

nothing in the record suggests that information concerning Petitioner's probation status and Seaton's outstanding warrant rendered Petitioner's trial fundamentally unfair. In light of all the evidence presented at trial, even if the prosecutor's comments were improper, Petitioner has failed to show that they were significant enough to influence the jury's decision. See Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998). As a result, Petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different without the alleged misconduct. See Hoxsie v. Kerby, 108 F.3d 1239, 1244-45 (10th Cir. 1997). Upon review of the trial transcript, this Court finds that the OCCA's rejection of this claim was not an unreasonable application of constitutional law. Petitioner is not entitled to habeas corpus relief on his ground six claim.

### 7.      Ineffective assistance of counsel (part of ground 7)

As part of ground seven, Petitioner contends that his trial counsel was constitutionally ineffective because he failed to present exculpatory evidence in the form of the 911 audiotape, and failed to preserve the record of various trial errors for appellate review. See Dkt. # 4 at 46- 48. Rejecting these claims on direct appeal, the OCCA found as follows:

> Wilson was not deprived of effective assistance of counsel because his attorney failed to request instructions that were not warranted or because his attorney failed to object during closing argument. Nor do we find that trial counsel was ineffective by failing to present Wilson's 911 tape on the record before us.

See Dkt. # 24, Ex. 4 at 4. The OCCA also denied Petitioner's request for an evidentiary hearing on his ineffective assistance of counsel allegations regarding the 911 audiotape. Id.

To be entitled to habeas corpus relief on his claim of ineffective assistance of counsel, Petitioner must demonstrate that the OCCA's adjudication of this claim was an unreasonable application of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was

prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993).

A defendant can establish the first prong by showing that counsel performed below the level

expected from a reasonably competent attorney in criminal cases.  Strickland, 466 U.S. at 687-88.

There is a "strong presumption that counsel's conduct falls within the range of reasonable

professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a]

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t

is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude

that a particular act or omission of counsel was unreasonable." Id. at 689.  To establish the second

prong, a defendant must show that this deficient performance prejudiced the defense, to the extent

that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability sufficient to

undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211,

1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).  This Court's review of

the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v.

Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential"

look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

Petitioner first argues that his trial counsel was constitutionally ineffective for failing to

present the 911 audiotape which would have revealed Petitioner's desperation and demonstrated that

he did not intend to kill John Cox. See Dkt. # 4 at 46. However, other evidence was presented that

Petitioner made a 911 call (Dkt. # 26-2, Tr. Trans. Vol. I at 242). Several witnesses testified that

Petitioner was trying desperately to lift the truck off of the victim, soliciting help from all who

19

arrived. See id. at 241; Dkt. # 26-3, Tr. Trans. Vol. II at 115-16, 147, and 181-82. Petitioner has failed to explain how trial counsel's failure to present the 911 audiotape was ineffective representation, or that the presentation of the tape would have resulted in a different outcome at trial. The OCCA's finding that counsel was not ineffective was not an unreasonable application of Supreme Court law. Habeas relief shall be denied on this portion of his ineffective assistance of counsel claim.

Next, Petitioner claims that his trial counsel was ineffective because he failed to request the lesser included offense instructions of Being Involved in an Accident While Under the Influence of Alcohol, and Causing an Accident While Under the Influence of Alcohol, and failed to object to the prosecutor's repeated references to Petitioner's probationary status during closing argument. As discussed in Part B(4) above, Petitioner's jury received instructions on the offenses of Second Degree Murder, First Degree Manslaughter, Negligent Homicide and Excusable Homicide. Under state law, the omitted instructions for the lesser included offenses of Being Involved in an Accident While Under the Influence of Alcohol, and Causing an Accident While Under the Influence of Alcohol, are appropriate when the defendant's conduct does not result in a fatality. See Okla. Stat. tit. 47, § 11-904(A), (B). In this case, the victim, John Cox, died. Therefore, instructions on the lesser included offenses of Being Involved in an Accident While Under the Influence of Alcohol and Causing an Accident While Under the Influence of Alcohol were not warranted.  For that reason, counsel did not perform deficiently in failing to request those instructions.

In Part B(6) above, the Court addressed Petitioner's claim of prosecutorial misconduct based on the prosecutor's comments, made during closing argument, regarding Petitioner's probationary status.  As part of ground seven, Petitioner alleges that his attorney provided ineffective assistance

in failing to object to the comments. However, as determined above, the comments were fair comment on the evidence since Petitioner's sister had testified as part of the defense's case, that she told her brother to leave the scene "because he was on probation." See Dkt.; # 26-3, Tr. Trans. Vol. II at  126. Accordingly, the failure of trial counsel to object to the prosecutor's comments was not deficient performance resulting in prejudice Petitioner.  Strickland, 466 U.S. at 694. Petitioner has not demonstrated that the OCCA's rejection of these two ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of Strickland, or was based on an unreasonable determination of the facts in light of the evidence presented at trial.  See 28 U.S.C. § 2254(d). Habeas relief is denied on these ground seven claims.

### 8.       Cumulative error (ground 8)

Next, Petitioner argues that the combined effect of the instructional errors, prosecutorial misconduct, inadmissible hearsay, ineffective assistance of counsel, and Fourth Amendment violation all combined to deprive him of a fair trial. See Dkt. # 4 at 52. On direct appeal, the OCCA concluded that, "Wilson was not denied a fair trial because of cumulative error."  Dkt. # 24, Ex. 4 at 5.

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900

F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, there is no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).

**C.     Procedural bar (remainder of ground 7)**

In addition to the two claims of ineffective assistance of counsel discussed in Section B(7) above, Petitioner also argues in ground seven that his counsel was ineffective for failing to inform him of a plea bargain offered by the State, for failing to allow Petitioner to testify in his own defense at trial, and for being "wholly unprepared." See Dkt. # 4 at 48-51. These claims were not raised on direct appeal, but were raised for the first time in post-conviction proceedings.[3] See Dkt. # 24, Ex.

---

[3]     Petitioner did not file his application for post-conviction relief pro se. He was represented by attorney M. Michael Arnett, the same attorney representing him in this habeas action. Nonetheless, the claims of ineffective assistance of counsel first raised in the application for post-conviction relief were conclusory and lacking in factual support. See Dkt. # 24, Ex. 6. Although counsel represented that "[a] brief in support of this proposition will be forthcoming to support this proposition with authority," see id. at 6, no brief was ever filed. In addition, Petitioner failed to provide factual support for his claims of ineffective assistance of counsel when they were presented to the OCCA on post-conviction appeal. See Dkt. # 24, Ex. 10. The post-conviction application was so lacking in factual support that Petitioner's more specifically alleged habeas claims are technically unexhausted. For example, Petitioner claims for the first time in this habeas case that trial counsel was unprepared as evidenced by his failure to hire appropriate experts, failure to cross-examine properly the detective who investigated the scene of the accident, and failure to challenge certain jurors for cause. See Dkt. # 4 at 45-46. He also specifically claims, for the first time, that two days into the trial, he learned from trial counsel's assistant that the State had made a plea offer of twelve years. Id. at 48. While those claims were not fairly presented to the OCCA, they are nonetheless procedurally barred. Anderson v. Sirmons, 476 F.3d 1131, 1139-40 n.7 (10th Cir. 2007) (finding that an "anticipatory procedural bar" may be applied to deny an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it). Furthermore, as in this habeas action, counsel for Petitioner did not offer on post-conviction appeal any explanation for Petitioner's failure to raise the defaulted claims of ineffective assistance of counsel on direct appeal. See Dkt. # 24, Exs. 6 and 10.

6 at 6. The state district court found that these propositions of error could have been raised on direct appeal, but were not. <u>See</u> Dkt. # 24, Ex. 8. The OCCA agreed, finding that all issues not raised in the direct appeal, which could have been raised, are waived. <u>See</u> Dkt. # 24, Ex. 11 at 2.

The doctrine of procedural default prohibits a federal court from considering a specific habeas claim where the state's highest court has declined or would decline to reach the merits of that claim on independent and adequate state procedural grounds, unless petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. 722, 724 (1991); <u>see</u> <u>also</u> <u>Matthews v. Workman</u>, 577 F.3d 1175, 1195 (10th Cir. 2009); <u>Maes v. Thomas</u>, 46 F.3d 979, 985 (10th Cir. 1995); <u>Gilbert v. Scott</u>, 941 F.2d 1065, 1067-68 (10th Cir. 1991).

Applying the principles of procedural default to these facts, the Court concludes that Petitioner's ineffective assistance of counsel claims first raised in his application for post-conviction relief are procedurally barred from this Court's review. Based on Okla. Stat. tit. 22, § 1086, the OCCA routinely bars claims that could have been but were not raised on direct appeal. The state court's procedural bar as applied to these claims was an "independent" ground because Petitioner's failure to comply with state procedural rules was "the exclusive basis for the state court's holding." <u>Maes</u>, 46 F.3d at 985. In addition, the bar imposed by the OCCA was based on state law grounds adequate to preclude federal review. When the underlying claim is ineffective assistance of counsel, the Tenth Circuit Court of Appeals has recognized that countervailing concerns justify an exception to the general rule of procedural default. <u>Brecheen v. Reynolds</u>, 41 F.3d 1343, 1363 (10th Cir. 1994) (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365 (1986)). The unique concerns are "dictated by the

interplay of two factors: the need for additional fact-finding, along with the need to permit the petitioner to consult with separate counsel on appeal in order to obtain an objective assessment as to trial counsel's performance." Id. at 1364 (citing Osborn v. Shillinger, 861 F.2d 612, 623 (10th Cir. 1988)). The Tenth Circuit explicitly narrowed the circumstances requiring imposition of a procedural bar on ineffective assistance of counsel claims first raised collaterally in English v. Cody, 146 F.3d 1257 (10th Cir. 1998). In English, the circuit court concluded that:

> Kimmelman, Osborn, and Brecheen indicate that the Oklahoma bar will apply in those limited cases meeting the following two conditions: trial and appellate counsel differ; and the ineffectiveness claim can be resolved upon the trial record alone. All other ineffectiveness claims are procedurally barred only if Oklahoma's special appellate remand rule for ineffectiveness claims is adequately and evenhandedly applied.

Id. at 1264 (citation omitted).

In this case, Petitioner was represented at trial by attorney C. Rabon Martin. On appeal, Petitioner was represented by attorney Gretchen Garner Mosley. For purposes of the first requirement identified in English, the Court finds that Petitioner had the opportunity to confer with separate counsel on appeal. The second English factor requires that the claim could have been resolved either "upon the trial record alone" or after adequately developing a factual record through some other procedural mechanism. Id. at 1263-64. Petitioner's defaulted claims are that trial counsel provided ineffective assistance when he (1) failed to inform him of a plea bargain offered by the State, (2) failed to allow Petitioner to testify in his own defense, and (3) proceeded to trial "wholly unprepared." See Dkt. # 4 at 48-51. Even if Petitioner's defaulted claims could not all be resolved on the record alone, he has failed to allege with specificity how the Oklahoma remand procedure provided by Rule 3.11, Rules of the Oklahoma Court of Criminal Appeals, was inadequate to allow him to supplement the record on his ineffective assistance of counsel claims. See Hooks v. Ward,

24

184 F.3d 1206, 1217 (10th Cir. 1999) (once the state pleads the affirmative defense of an independent and adequate state procedural bar, the burden shifts to the petitioner to make specific allegations as to the inadequacy of the state procedure). In his reply (Dkt. # 29), Petitioner does not even acknowledge the procedural bar defense raised by Respondent and makes no effort to demonstrate inadequacy of the OCCA's remand procedure provided by Rule 3.11. As a result, Petitioner has failed to carry his burden of demonstrating that Oklahoma's procedural bar is inadequate and his claims of ineffective assistance of trial counsel as raised in his post-conviction proceedings are procedurally barred.

Because of the procedural default of the identified claims in state court, this Court may not consider the claims unless Petitioner is able to show cause and prejudice for the default, or demonstrate that a fundamental miscarriage of justice would result if his claims are not considered. See Coleman, 501 U.S. at 750. The cause standard requires a petitioner to "show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." Murray v. Carrier, 477 U.S. 478, 488 (1986). Examples of such external factors include the discovery of new evidence, a change in the law, and interference by state officials. Id. As for prejudice, a petitioner must show "'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982). A "fundamental miscarriage of justice" instead requires a petitioner to demonstrate that he is "actually innocent" of the crime of which he was convicted. McCleskey v. Zant, 499 U.S. 467, 494 (1991).

In his reply (Dkt. #29), Petitioner argues the merits of his ground seven claims as if there were no procedural default. Petitioner presents no argument to establish cause and prejudice for the default, nor does he attempt to overcome the procedural default by arguing a fundamental

miscarriage of justice would result if the Court does not consider his claim.  Petitioner has failed to demonstrate that he falls within either exception to the doctrine of procedural bar.

Accordingly, because Petitioner has not demonstrated "cause and prejudice" or that a "fundamental miscarriage of justice" will result if his ground seven claims raised for the first time on post-conviction are not considered, the Court concludes that it is procedurally barred from considering the merits of these defaulted claims.  <u>Coleman</u>, 510 U.S. at 724. Petitioner is not entitled to habeas corpus relief on the ineffective assistance of counsel claims included in ground seven which were not raised on direct appeal.

### D.  Certificate of appealability

Rule 11, <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000) (citing <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)). In addition, when the Court's ruling is based on procedural grounds, Petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Slack</u>, 529 U.S. at 484.

In this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA is debatable among jurists of reason.  See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004). As to those claims denied on a procedural basis, Petitioner has failed to satisfy the second prong of the required showing, i.e., that the Court's ruling resulting in the denial of the petition on procedural grounds is debatable or incorrect.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

## CONCLUSION

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.   The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.   A separate judgment in favor of Respondent shall be entered in this matter.

3.   A certificate of appealability is **denied**.

DATED THIS 4th  day of April, 2013.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

27